IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| TIMBER RIDGE ESCAPES, LLC, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 6:17-cv-03169-MDH |
| QUALITY STRUCTURES OF ARKANSAS, LLC, | ) **ORAL ARGUMENT REQUESTED** |
| Defendant | ) |
| v. | ) |
| WELK RESORT GROUP, INC. | ) |
| Counterclaim-Defendant. | ) |

## TIMBER RIDGE ESCAPES, LLC and WELK RESORT GROUP, INC.'s REPLY SUGGESTIONS IN SUPPORT OF ITS MOTION TO EXCLUDE EXPERT TESTIMONY

Timber Ridge Escapes, LLC ("TRE") and Welk Resort Group, Inc. ("Welk"), hereby submit the following Reply Suggestions in Support of their Motion to Exclude Expert Testimony.

## Introduction

Quality Structures of Arkansas, LLC ("QS") wants to submit expert testimony to the jury that wholly disregards the agreement between TRE and QS (the "Parties") reflected in the Contracts for construction of the buildings comprising the Project in this case. The Contracts provide clear and unambiguous limits to QS' recovery on Project costs in the form of a Guaranteed Maximum Price ("GMP"); stipulates the only way to achieve a change in the GMP is through agreed-upon, written Change Orders; and requires QS to provide <u>notarized</u> payment applications that, among other thing, certify the percentage of completion of Project categories.

1

"Ultimately, **every expert witness who calculates damages sustained from a breach of a given contract must assume the contract's enforceability under the law.**" *Platypus Wear, Inc. v. Clarke Modet & Co.*, 2008 WL 4533914, at *6 (S.D. Fla. Oct. 7, 2008) (emphasis added). Each of QS' designated experts seeks to submit evidence to the jury, on QS four <u>breach of contract</u> claims, of alleged damages for which it has no right of recovery pursuant to the Contracts, in clear disregard for the Contracts' terms. Thus, these experts' reports and testimony must be excluded.

In addition to each expert's complete and unjustified disregard for the Contracts' express terms, the experts would also fail to assist the jury in the following manners. Josh Holland's retrospective analysis of the volume of material excavated was merely a "best guess estimate" that does not qualify for the authority of an expert opinion on the amount of excavation performed; Joseph Page relied solely on documentation from Quality Structures that a jury could easily understand without expert testimony; and Terry Yeager offered a unilateral opinion that QS did not cause any delays despite stating in his deposition that QS may have been involved with delays and he would have to speculate as to who caused the many Project delays.

## Analysis

I. <u>Josh Holland's "best guess estimate" would not provide any assistance to a jury because QS expressly waived any claim for excavation work beyond what it already received payment for and QS improperly characterizes this estimate as an authoritative and binding opinion.</u>

   **A. Expert evidence about an estimate for work conducted well over a year <u>after</u> QS issued lien waivers for that completed work is irrelevant and confusing to the jury.**

Mr. Holland's 2017 estimate and report and 2018 testimony about the amount of excavation he estimated occurred in 2015 is irrelevant given QS' complete recovery for that work under the Contracts and waiver of additional recovery for the excavation work in signed

lien waivers. *See* Ex. K (Payment Applications showing Excavation 100% Complete). QS submitted monthly payment applications to TRE for work completed pursuant to the Contracts. *See* Ex. E[1]; K. These payment applications were signed and notarized by a QS representative, were accompanied by signed lien waivers for the work reflected in that month's payment request, and included a schedule of values wherein QS would indicate the percentage of completion of a particular category of work. *Id.*

QS certified that excavation work for the Project was 100% complete as of November 2015. Ex. K. Despite this, **it now seeks an additional $1,466,725.54 for excavation work completed in 2015 based on Change Order Requests created on March 6, 2017**. Through Mr. Holland, QS is seeking to submit an estimate and corresponding expert testimony about the amount of excavation performed over a year previously despite submitting lien waivers for that excavation work.

Mr. Holland made no attempt to reconcile the reason for his 2017 calculation of excavation performed in 2015.[2] In fact, QS did not even provide him with payment applications (certifying the percentage of completion of that category), information about when the work was completed, or have him visit the site of the excavation. Ex. M, 18: 18-20; 39:5-18.

QS' waiver of further recovery for excavation work in its lien waivers precludes evidence of alleged damages for that same work. *See e.g., Hart & Son Hauling, Inc.*, 706 S.W.2d at 588; *Sauer Inc. v. Honeywell Bldg. Sols. SES Corp.*, 742 F. Supp. 2d 709, 720 (W.D. Pa. 2010) ("The signed release submitted by Sauer in connection with its eighteenth progress payment application

---

[1] Exhibits in these Reply Suggestions refer to the Exhibits submitted with TRE and Welk's Suggestions in Support of Their Motion to Exclude Experts. Doc. 161. The exhibit attached to these suggestions merely contains an additional page of deposition testimony not included in Document 161.

[2] Mr. Holland testified that he had never performed calculations for completed projects, such as he did here. Ex. M, 40:2-10.

3

waived claims which had accrued as of December 20, 2006."). Here, not only does QS seek to insert allegations of a right to additional funds for that work to a jury, but attempts to do in the form of an expert, who may impermissibly sway the jury through his credentials. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595 (1993) (discussing the powerful and potentially misleading effect of expert testimony).

### B. Mr. Holland's "best guess estimate" does not qualify as an expert opinion on the volume of material excavated.

QS' Expert Designation stated that Mr. Holland, if retained would "form an opinion about the quantity of rock and other material excavated by Quality Structures at the project site." Doc. 125. QS' Suggestions in Opposition to TRE and Welk's Motion to Exclude Expert Testimony ("Opposition Suggestions") states that Mr. Holland "quantified the volume of rock and material excavation by Quality Structures[.]" However, Mr. Holland's own report notes in bold, italicized and underlined font that "***This takeoff is based off of provided bore logs, provided construction plans and stated work. As in all earthwork estimating this is a best guess estimate of quantities and should not be construed as anything more than an estimate.***" Ex. H (Holland Report). While such an estimate might have qualified for use as an exhibit at trial if it were actually used to create QS' bid for the work, it was created after the actual work was performed and thus is not admissible and should especially not carry the weight of expert testimony. Mr. Holland's clear written and oral testimony is that he was not able to determine with certainty the amount of excavation that occurred. *See id;* Ex. M, 41:6-43:15. Indeed, he could not even determine a likely variance of the accuracy of takeoffs due to the multitude of potential factors at play. Ex. M, 42:23-43:15.

"Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it." *Daubert*, 509 U.S. at 595. Presenting Mr. Holland's "best guess estimate" as an

4

expert report seeking to establish the definitive amount of excavation conducted on a completed project would not be helpful for the jury and would unfairly prejudice TRE due to the powerful and persuasive nature of expert testimony. Accordingly, the Court should exclude Mr. Holland's report and testimony. *See United States v. Kime*, 99 F.3d 870, 884 (8th Cir. 1996) ("Here the district court properly recognized the very real danger that the proffered expert testimony could either confuse the jury or cause it to substitute the expert's credibility assessment for its own.").

II. Joseph Page's failure to consider QS' notarized certifications of completed work in payment application and failure to verify that QS' documented costs were actually Project related renders his opinion irrelevant, unnecessary, and unhelpful to the jury.

Mr. Page, a CPA, testified that his scope of work was limited to a review of QS' own documentation allegedly recording Project costs, without an independent review of whether the costs identified within those documents were actually incurred on the Project. *See* Ex. L, 16:22-17:2; 27:6-28:9. Mr. Page admitted that he did not verify any of the amounts listed on invoices created by QS. Ex. L, 15:4-14. Most importantly, Mr. Page stated that he did not review any payment applications for the Project, in which QS itself certified the costs for work completed as of the date of each payment application! *See* Ex. L, 13:14-15. This is particularly concerning when QS submitted payment applications with a final request for payment <u>after termination</u>. Ex. E (final payment applications). QS, through Mr. Page's misleading opinions (on which Mr. Yeager relies for his damages calculations), now attempts to receive millions of dollars more than the amount listed in its final payment applications! Despite this discrepancy, Mr. Page offers no explanation for the reason he fails to take QS' own admissions into account or even to allocate alleged Project costs based on the payment application to which it should have corresponded.

"[E]xpert testimony not only is unnecessary but indeed may properly be excluded in the discretion of the trial judge 'if all the primary facts can be accurately and intelligibly described to

5

**the jury**, and if they . . . **are as capable of comprehending the primary facts and of drawing correct conclusions** from them as are witnesses possessed of special or peculiar training, experience, or observation in respect of the subject under investigation." *Salem v. U.S. Lines Co.*, 370 U.S. 31, 35 (1962). Mr. Page offered no specialized expertise that would provide additional insight to the jury in selectively reviewing some of QS' own documents, while ignoring other vital Project documentation. Instead, his testimony risks the jury substituting an evaluation of Mr. Page's credibility for the proper credibility determination between the Parties. *See Kime*, 99 F.3d at 884. Accordingly, the Court should exclude Mr. Page's report and testimony.

III. <u>Terry Yeager's unexplained refusal to provide a damages-analysis based on the Contracts' express terms and his inconsistent and incomplete ability to determine the cause of Project delays renders his opinions irrelevant, unhelpful, and unfairly prejudicial to TRE.</u>

    **A. Mr. Yeager's damages models failure to account for the plain language of the Contracts, without explanation, ignores his obligation to assume the Contracts' enforceability for purposes of calculating damages.**

Mr. Yeager's two damage models disregard the cap on recoverable expenses QS consented to in Section 5.2.1 of the Contracts and thus improperly ignores the Contracts' enforceability under the law. Ex. A (TRE R-26 4); Ex. B (TRE R-26 145); Ex. C (TRE R-26 288); Ex. D (TRE R-26 416) ("Costs which would cause the Guaranteed Maximum Price to be exceeded shall be paid by the Contractor without reimbursement by the Owner."). One of Mr. Yeager's damages models refers to the GMPs but unilateral adjusts them by unapproved Change Order <u>Requests</u> and an alleged math error that QS seeks to incorporate into the GMPs. Mr. Yeager testified that this form of damages calculation is <u>not based on any industry standard or treatise.</u> Ex. I (Yeager Deposition), 117:8-14.

**Expert opinions that do not accurately calculate damages are of no assistance to jury and are irrelevant.** *See, e.g., Ward v. Fears*, 2003 WL 25686523, at *3 (W.D. Mo. Mar. 18,

6

2003) (finding that expert's opinion regarding measure of damages "will not assist the jury" and "might potentially confuse the jury because it is the Court's job to instruct the jury on the appropriate measure of damages") (emphasis added). "Ultimately, every expert witness who calculates damages sustained from a breach of a given contract **must assume the contract's enforceability under the law**." *Platypus Wear, Inc.*, 2008 WL 4533914, at *6 (emphasis added). Not only are inaccurate damages calculations irrelevant and unhelpful, but they risk "putting unrealistic damage figures before the jury" that "could easily confuse the jury and result in a decision that is contrary to applicable law." *Fail-Safe, L.L.C. v. A.O. Smith Corp.*, 744 F. Supp. 2d 870, 900 (E.D. Wis. 2010) (emphasis added).

The plain language of the Contracts provide for a cap on recoverable costs in the form of a GMP and thus governs potential damages in breach of contract actions (and quasi-contract claims based on a contract, as described in TRE and Welk's Suggestions in Support of their Motion to Exclude Expert Testimony) such as QS' Counts II, IV, VI, and IX. Even QS acknowledges that its effort to avoid the GMPs requires an affirmative finding by the Court to defeat the Contracts' plain terms.[3] Therefore, Mr. Yeager's damages opinions – which do not take the GMPs into account or even provide an explanation of why he chooses to ignore this portion of the Contracts – are irrelevant, unhelpful, and unfairly prejudicial to TRE.

### B. Mr. Yeager's testimony regarding his schedule analysis is inconsistent and demonstrates an incomplete understanding of the schedule.

Mr. Yeager included a conclusory opinion in his report that "Quality Structures did not delay the construction of [Buildings 8 and 9]." Ex. F (Yeager Report), pp. 13, 17. In contrast to this bold and unsupported statement, he testified as follows at his deposition: "Were there delays along the way that Quality Structures may have been involved with? Yeah." Ex. I (Yeager

---

[3] Opposition Suggestions, p. 9 ("If the Court and and/or jury determines the GMP's are not enforceable, then Quality Structures will be entitled to recover its unpaid costs and contractor fee under Articles 5 and 7.").

7

Deposition), 60:12-14. In an effort to ascertain how Mr. Yeager had reached the conclusion in his report, counsel for TRE and Welk asked Mr. Yeager if he was able to provide an opinion as to who <u>did</u> cause the many Project delays. In response, Mr. Yeager could only conclude that "at the end of the day, it was not Quality Structures. I'd be speculating beyond that." Ex. I, 58:5-14.

Every step of an expert's analysis to reach an admissible opinion "must be supported by good grounds[.]" *R&R Intern., Inc. v. Manzen, LLC*, 2010 WL 3605234, at *16 (S.D. Fla. Sept. 12, 2010). Furthermore, an expert must explain <u>how</u> his conclusion is grounded. Fed. R. Evid. 702 advisory committee's note (2000). As demonstrated in Mr. Yeager's contradictory report and deposition testimony, Mr. Yeager has not and cannot adequately support his conclusory statement that QS did not delay the Project construction. Therefore, Mr. Yeager's schedule opinions – which are not properly supported – are irrelevant, unhelpful, and unfairly prejudicial to TRE. *See Meterlogic, Inc. v. KLT, Inc.*, 368 F.3d 1017, 1019 (8th Cir. 2004) ("The district court <u>must</u> exclude expert testimony if it is so fundamentally unreliable that it can offer no assistance to the jury[.]") (emphasis added). Accordingly, the Court should Mr. Yeager's report and testimony.

WHEREFORE, Timber Ridge Escapes, LLC and Welk Resort Group, Inc. request the Court exclude the opinion, report, and any testimony of Quality Structures of Arkansas, LLC's proposed experts Terry Yeager, Joseph Page, and Josh Holland, and for such other and further relief as the Court deems just and proper.

HUSCH BLACKWELL LLP

*/s/ Bryan Wade*
| | |
|---|---|
| Bryan O. Wade | #41939 |
| Ginger K. Gooch | #50302 |
| Larissa M. Whittingham | #69417 |

901 St. Louis St., Suite 1800
Springfield, MO 65806
Telephone: 417-268-4000
Facsimile: 417-268-4040
E-Mail: bryan.wade@huschblackwell.com
ginger.gooch@huschblackwell.com
larissa.whittingham@huschblackwell.com

**ATTORNEYS FOR TRE AND WELK RESORT GROUP, INC.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing instrument was forwarded this 6th day of November, 2018, by the court's electronic notification system, to all counsel of record.

*/s/Bryan Wade*
Attorney